UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| KAREL MENDEZ GONZALEZ, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:26-cv-249-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| JEFF TINDALL, *et al.*, | ) | **ORDER** |
| | ) | |
| Respondents. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on the Second Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition for Writ of Habeas Corpus"), [R. 9], filed on April 23, 2026 by Petitioner Karel Mendez Gonzalez.[1] Therein, Petitioner alleges that Respondents—which include Jeff Tindall, the Warden/Jail Administrator of the Oldham County Detention Center; Sam Olson, the Field Office Director, Immigration and Customs Enforcement ("ICE") Field Office, Chicago Field Office; Markwayne Mullin, the Secretary of the U.S. Department of Homeland Security ("DHS"); Todd Lyons, the Senior Official Performing the Duties of Director of ICE; Todd Blanche, the Acting Attorney General of the United States—have detained him in violation of the Immigration and Nationality Act (hereinafter, "INA") and the Fifth Amendment's Due Process Clause. [R. 9, pp. 32–37]. The Court issued an Order to Show Cause, [R. 10], on April 27, 2026, setting an evidentiary hearing date and establishing a briefing schedule for the parties. In response, the parties submitted briefs, [R. 13 (Respondents' Response); R. 15 (Petitioner's Reply)], and filed

---

[1] Petitioner filed his original petition on April 6, 2026. [R. 1]. He was permitted to file an amended petition naming the appropriate federal respondents, *see* [R. 5], [R. 7], and he was then permitted to file this second amended petition to identify certain respondents by name. *See* [R. 8], [R. 9].

a join motion to forego the evidentiary hearing. [R. 12]; *see also* [R. 14]. The matter has thus been fully briefed and is ripe for review. For the reasons that follow, the Court will deny Petitioner's Petition for Writ of Habeas Corpus, [R. 9].

## I.   BACKGROUND

Petitioner is a twenty-two-year-old native and citizen of Cuba who has been present in the United States since on or about May 30, 2022. [R. 13, p. 7]; [R. 13-9, p. 1]. On or about that date, he entered the United States without inspection near the Eagle Pass International Bridge in Texas and was apprehended. [R. 13-9, p. 2]. On June 1, 2022, DHS initiated immigration removal proceedings against him before the Memphis Immigration Court pursuant to 8 U.S.C. § 1229a by filing a Form I-862, Notice to Appear (hereinafter, "NTA"). [R. 13-2]. The NTA charged Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i)[2] as being "present in the United States without being admitted or paroled," [R. 13-2, p. 1], and further alleged the following:

1. You are not a citizen of national of the United States;
2. You are a native of CUBA and a citizen of CUBA;
3. You arrived in the United States at or near EAGLE PASS, TX, on or about May 30, 2022;
4. You were not then admitted or paroled after inspection by an Immigration Officer.

*Id.*

On that same date, June 1, 2022, Petitioner was released on his own recognizance. [R. 13-3]. He was issued an Order of Release on Recognizance, which explained, "You have been arrested and placed in removal proceedings. In accordance with section 236 of the [INA], [that is, 8 U.S.C. § 1226], and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with" certain conditions, including

---

[2] The NTA cites to "212(a)(6)(A)(i) of the Immigration and Nationality Act." [R. 13-2, p. 1]. The Court will instead use U.S.C. citations throughout for uniformity.

reporting for ICE interviews or hearings. *Id.* at 1.

On November 30, 2025, Petitioner was arrested in Louisville, Kentucky and charged with driving without a license, careless driving, and failure to maintain insurance. [R. 13, p. 2]; *see also* [R. 13-4]; [R. 13-9, p. 2]. On December 1, 2025, shortly after his arrest, Petitioner was taken into ICE custody pursuant to a DHS arrest warrant. *See* [R. 13-8 (DHS Arrest Warrant)]. A DHS Form I-213 (Record of Deportable/Inadmissible Alien), completed on December 4, 2025, lists his "Current Criminal Charges" as "12/01/2025 - 8 U.S.C. § 1225 – Inspection by Immigration Officer." *Id.* at 2. Then, in the "Basis for ICE Charges" section, the Form I-213 cites 8 U.S.C. § 1182(a)(6)(A)(i) and identifies Petitioner as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.*

By way of background, on July 8, 2025, DHS, in coordination with the United States Department of Justice, issued a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," which provides that all "applicants for admission" should be detained pursuant to 8 U.S.C. § 1225, rather than § 1226. *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/6JYU-M2SY]. In a reversal of longstanding ICE policy, the change effectively subjects all persons who previously entered the United States without inspection to mandatory detention under § 1225(b)(2)(A), regardless of how long they have been present in the United States or whether they were detained at or near the United States border or other ports of entry. *See id.*

After ICE took custody of Petitioner, Petitioner requested a bond redetermination hearing

in front of an Immigration Judge (hereinafter, "IJ") pursuant to 8 C.F.R. § 1236. *See, e.g.*, [R. 9, p. 9]; [R. 9-1]. On January 21, 2026, the IJ issued a decision denying the request for a change in custody status, stating,

> This Court lacks authority to hear bond requests or to grant bond to aliens who are present in the United States without admission. *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025). The Court is unaware of any rulings that operate as an injunction and/or purport to vacate, stay, or enjoin *Yajure Hurtado*. *Yajure Hurtado* remains binding precedent.

[R. 9-1, p. 1]. The IJ also held that, "[s]hould a reviewing body find that the Court has authority to hear this bond, the Court finds that [Petitioner] is a danger and, in the alternative, a flight risk." *Id.*

On April 8, 2026, ICE cancelled Petitioner's Order of Release on Recognizance. [R. 13-10]. Meanwhile, on April 6, 2026, Petitioner filed a pro se Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, naming only Jeff Tindall, the warden of the Oldham County Detention Center, as a respondent. [R. 1]. The Court permitted Petitioner an opportunity to amend his petition to name the relevant federal authorities, [R. 5], and, after obtaining counsel, Petitioner filed an amended petition. [R. 7]. However, that petition failed to name the warden and the ICE Field Office Director by name, so the Court again permitted Petitioner to amend his petition.  [R. 8]. Petitioner then filed the current Second Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, [R. 9], on April 23, 2026. In this petition, Petitioner alleges violations of the INA and the Fifth Amendment Due Process Clause. [R. 9, pp. 32–37]. Petitioner argues that because he was previously arrested, placed in removal proceedings, and released on his own recognizance under the framework of § 1226, Petitioner's detention is under § 1226 of the INA, not under § 1225. *See, e.g.*, [R. 9, pp. 13, 16–22]. Accordingly, Petitioner argues that he is entitled to a bond hearing before a neutral IJ pursuant to § 1226(a). *See, e.g.*, *id.* at 16–17, 32–33.

Respondents assert that Petitioner's detention is proper under § 1225(b)(2)(A) of the INA because Petitioner qualifies as an "applicant for admission," a category of noncitizens subject to mandatory detention pending removal proceedings. *See, e.g.*, [R. 13, p. 1]. Respondents "rely on and incorporate by reference the legal arguments from the briefs the government filed with the Sixth Circuit Court of appeals in the four §§ 1225/1226 appeals" currently before that Court. [R. 13, p. 5]. Those cases are *Lopez-Campos v. Raycraft*, Case No. 25-1965 (6th Cir. Oct. 27, 2025); *Alvarez v. Noem*, Case No. 25-1969 (6th Cir. Oct. 27, 2025); *Contreras-Cervantes v. Raycraft*, Case No. 25-1978 (6th Cir. Oct. 28, 2025); *Pizarro Reyes v. Raycraft*, Case No. 25-1982 (6th Cir. Oct. 29, 2025). Respondents concede that the "relevant facts in all four matters on appeal" are "similar to the relevant facts in this matter" and the only "relevant legal question" is whether the Petitioner is detained under Section 1225(b)(2)(A) or Section 1226. [R. 13, p. 5].

In his prayer for relief, Petitioner seeks, among other things, an order that his detention is governed by § 1226 and his continued detention is unlawful; his immediate release from ICE custody; an injunction enjoining Respondents from continuing to detain him absent "a lawful statutory basis and a constitutionally adequate custody adjudication." [R. 9, p. 42]. In the alternative to immediate release, Petitioner asks this Court to order Respondents to provide a bond hearing before a neutral decisionmaker. *Id.*

## II.    LEGAL STANDARD

Habeas relief is available where a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The right to petition for a writ of habeas corpus is "'available to every individual detained within the United States,'" *Montiel v. Raycraft*, No. 1:25-cv-1610, 2026 WL 32076, at *1 (W.D. Mich. Jan. 6, 2026) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)), including "non-citizens in immigration-related matters." *Id.*

(citations omitted). The petitioner seeking habeas relief bears the burden of proving by a preponderance of the evidence that his detention was unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022) (citation omitted).

Section 2241 confers jurisdiction on federal courts to review noncitizens' claims challenging the constitutionality of their detention during the pendency of removal proceedings. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."). Although § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the . . . denial of bond or parole," the Supreme Court has recognized that district courts retain jurisdiction to hear habeas petitions concerning issues that are collateral or ancillary to removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("Section 1226(e) does not preclude challenges to the statutory framework that permits [an] alien's detention without bail." (quotations omitted) (citing *Demore*, 538 U.S. at 517)). Because Petitioner challenges the statutory and constitutional validity of his detention, and does not directly challenge his removal proceedings, the Court finds that it has jurisdiction to consider Petitioner's claims.

### III. ANALYSIS[3]

As this Court has previously outlined, Congress has distinguished between two classes of aliens, providing a bond hearing for those detained under 8 U.S.C. § 1226(a) but imposing mandatory detention without bond for those detained under § 1225(b)(2). *See Martinez-Elvir v. Olson*, No. 3:25-CV-589-CHB, 807 F.Supp.3d 725, 735 (W.D. Ky. Oct. 27, 2025) (discussing each provision); *see also Lopez-Campos v. Raycraft*, -- F. 4th --, 2026 WL 1283891 (6th Cir. May 11, 2026). Petitioner claims that his detention is governed by § 1226, while Respondents insist that he is detained under § 1225, as outlined above. However, for the reasons set forth in this decision, the Court finds that Petitioner has received the process he is due regardless of the statutory authority for his detention—in other words, regardless of whether his detention is pursuant to § 1225 or § 1226. This is because to the extent Petitioner is entitled to a bond hearing under § 1226, the parties agree he has already received it. *See, e.g.*, [R. 9, 2]; [R. 13, pp. 4–5].

On this point, it is important to note that Petitioner does *not* ask the Court to reconsider the IJ's determination that he is a flight risk or a danger to others. *See* [R. 9, p. 28 ("Petitioner is not asking this Court to reweigh whether he is a danger or a flight risk on a concededly valid administrative record. He is not asking this Court to substitute its own bond judgment for that of an Immigration Judge who exercised lawful custody jurisdiction.")]; *id.* at 30 ("The issue for this court is therefore not whether the Immigration Judge abused discretion in denying bond."). Indeed, district courts lack jurisdiction to review discretionary bond decisions made by an IJ. *See* 8 U.S.C.

---

[3] Respondents do not assert any exhaustion-related arguments, [R. 14], and no applicable statute or rule mandates exhaustion, *see Martinez-Elvir v. Olson*, 807 F.Supp.3d 725, 733, 733 n.4 (W.D. Ky. 2025) (noting no awareness of statutes or regulations requiring exhaustion). However, because many decisions in similar cases by district courts within the Sixth Circuit discuss this principal, the Court incorporates its analysis on exhaustion of remedies from a previous case, *Marintez-Elvir*, 807 F.Supp.3d at 732–35, and the Court waives the exhaustion requirement for the same reasons stated therein.

§ 1226(e); *Nielsen v. Preap*, 586 U.S. 392, 401 (2019). But here, Petitioner does not seek to challenge the IJ"s "danger" and "flight risk" findings; instead, he "contends that there was no valid bond hearing because the Immigration Judge expressly held that he lacked authority to hear the bond request at all." [R. 9, pp. 29–30]. Stated another way, "[t]he issue is whether advisory comments made after a jurisdictional dismissal can be treated as the equivalent of a lawful custody adjudication." *Id.* at 30.

The Court addressed a similar argument in *Ordonez v. Field Office Director*, No 3:26-CV-067-CHB, 2026 WL 927173 (W.D. Ky. Apr. 6, 2026). In that case, the IJ had similarly ruled that he lacked jurisdiction to consider the petitioner's custody redetermination request but alternatively ruled that, in the event a reviewing body found that he had such jurisdiction, the petitioner was a flight risk or danger to the community. *See id.* at *2. The petitioner argued that this created a "jurisdictional void where neither the Immigration Courts nor the federal courts may test the legality of confinement." *Id.* at *4 (citation omitted) (internal quotation marks omitted). Thus, like Petitioner in the present matter, the petitioner in *Ordonez* "appear[ed] to believe that he did not receive a bond hearing at all, and therefore . . . he has been denied any meaningful review of his detention." *Id.* The Court disagreed, explaining,

> Petitioner does not appear to understand that the IJ's bond determination provided precisely the process he is due under the Fifth Amendment. As the Court has already extensively discussed elsewhere, *see Martinez-Elvir*, 807 F.Supp.3d at 735, the INA provides two frameworks for detention depending on whether an alien is an "applicant for admission" or an "alien seeking admission" under 8 U.S.C. § 1225, or is instead an "alien" covered by the more general provision 8 U.S.C. § 1226. This distinction between § 1225 and § 1226 corresponds to the IJ's alternative grounds for his decision in Petitioner's case. Although the IJ did not explain as such, if Petitioner's detention was under § 1225, then the IJ determined *Matter of Hurtado* applies and forbids him from granting bond. [R. 5-2, p. 1]; *see* 29 I&N Dec. 216, 227 (2025) ("[T]he mere issuance of an arrest warrant does not endow an Immigration Judge with authority to set bond for an alien who falls under Section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A)."). But, if Petitioner's detention was under § 1226, the IJ understood that Petitioner was entitled to a bond

- 8 -

hearing, and thus he appropriately issued findings as to Petitioner's danger to the community and flight risk. [R. 5-2, p. 1]. Although the IJ could have explained this reasoning more clearly, to summarize, the IJ ruled that if Petitioner was detained under § 1225, the IJ lacked jurisdiction to release him, and alternatively, if Petitioner was detained under § 1226, he was a flight risk and a danger to the community, and therefore release was not warranted. *See id.* In making this determination, the IJ afforded Petitioner all the process he was due under BIA precedent and the text of the INA. *See* [R. 5-2].

*Ordonez*, 2026 WL 927173, at *5.

The same reasoning applies here. While the IJ certainly could have explained his reasoning more clearly, his ruling is clear enough. The IJ ruled that, if Petitioner was properly detained under § 1225, he lacked authority to issue bond, and if Petitioner was actually detained under § 1226, he *did not lack authority to issue bond* but Petitioner was a flight risk and/or danger to the community, and therefore bond was not warranted. "In making this determination, the IJ afforded Petitioner all the process he was due under BIA precedent and the text of the INA," regardless of whether he is now detained under § 1225 or § 1226. *Ordonez*, 2026 WL 927173, at *5; *see also Ascanta v. Bondi*, No. 25-237-DLB, 2026 WL 1032007, at *3 ("Here, the Court 'is not persuaded, based on the arguments before it, that the IJ's decision was unlawful merely because it was handed down on an in-the-alternative basis.'" (quoting *Kumar v. Anda-Ybarra*, No. CIV-26-164-R, 2026 WL 753944, at *2 (W.D. Okla. Mar. 17, 2026)) (cleaned up)).

In sum, Petitioner does not dispute that he requested and received a custody redetermination hearing. *See, e.g.*, [R. 9, 2]. And he does not allege that the IJ wholly failed to consider the evidence presented, nor does he claim that the hearing was procedurally improper. *See generally* [R. 9]; [R. 15]. Simply put, Petitioner fails to raise a cognizable challenge to the underlying statutory framework or the extent of ICE's detention authority. Lastly, as the Court has already briefly outlined, to the extent Petitioner takes issue with the IJ's discretionary decision to

deny bond, that challenge is barred by § 1226(e). *See Nielsen*, 586 U.S. at 401; *Jennings*, 583 U.S. at 295; *Demore*, 538 U.S. at 516. Taken together, Petitioner is not entitled to the relief he seeks.

## IV.    CONCLUSION

For the above-stated reasons, the Court finds that it need not determine whether Petitioner is detained under § 1225, or § 1226 because, regardless of which provision governs his detention, Petitioner has received the process he is due. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1.    Petitioner's Second Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, [**R. 9**], is **DENIED**.

This the 12th day of May, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY